## A99A1445. MILES v. SMITH.
### (521 SE2d 687)

BLACKBURN, Presiding Judge.

Sid Miles, the Commissioner of the Georgia Department of Public Safety, appeals the superior court's order reversing an administrative law judge's decision to suspend Ronald S. Smith's driver's license. Although the superior court found "no merit" to Smith's petition for review of the administrative decision, the court nevertheless reversed that decision because the ALJ "improperly admitted and considered hearsay evidence at trial."

1. As we have held:

A superior court, when reviewing a DPS decision, sits only as an appellate court. The decision of DPS shall be affirmed so long as there is "any evidence" to support it. *Miles v. Carr*, 224 Ga. App. 247 (480 SE2d 282) (1997); *Bowman v.*

*Palmour*, 209 Ga. App. 270 (1) (433 SE2d 380) (1993). The superior court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." OCGA § 50-13-19 (h). *Hardison v. Fayssoux*, 168 Ga. App. 398, 401 (309 SE2d 397) (1983). When reviewing a superior court's order in a case under the Administrative Procedure Act, this Court's function " 'is to determine whether the . . . superior court has in (its) own final ruling committed an error of law.' (Cit.)" *Miles v. Carr*, supra; *DeWeese v. Ga. Real Estate Comm.*, 136 Ga. App. 154, 155 (1) (220 SE2d 458) (1975).

*Miles v. Andress*, 229 Ga. App. 86 (493 SE2d 233) (1997).

In this case, the superior court reversed the holding of the ALJ even though it determined that there was no merit to the claim, because hearsay evidence was admitted at the hearing. In a case where the factfinder is a judge, we assume the judge considers the evidence only for proper purposes and sorts out that which is admissible from that which is not. See *Lyles v. State*, 221 Ga. App. 560, 562 (3) (472 SE2d 132) (1996); *Foster v. Continental Cas. Co.*, 141 Ga. App. 415, 418 (6) (233 SE2d 492) (1977). There must have been some admissible evidence to support the ALJ's decision. Where there was other admissible evidence supporting the holding, the "any evidence" standard requires that the case be affirmed. Reviewing this case under the standard set forth above, we find as follows:

In this case, DPS sought to suspend Smith's license by showing that he refused to submit to a state-administered alcohol test following his arrest for DUI. In reviewing Smith's driver's license suspension, the ALJ had to determine whether Smith had been under physical control of the car, whether Smith had been arrested for DUI, and whether, at the time of the request for the test or tests, that Deputy Tabb informed him of his implied consent rights and the consequence of submitting or refusing to submit to such tests. OCGA § 40-5-67.1; *Miles v. Wells*, 225 Ga. App. 698 (484 SE2d 720) (1997).

The evidence presented at the administrative hearing showed that Deputy W. T. Tabb responded at 1:07 a.m. to the scene of a one-car accident and found Smith sitting in a ditch next to his overturned car. Smith told the deputy he was the only occupant in his car at the time of the incident. Deputy Tabb testified that Smith had minor injuries and refused treatment by the responding EMT. Also, Smith smelled of alcohol. Deputy Tabb read Smith the statutory implied consent warnings and asked Smith to submit to an Intoximeter 5000 alcohol test at the Grady County Sheriff's Department. Smith agreed. When they arrived at the sheriff's department, Deputy Tabb set up the Intoximeter 5000. Just as the deputy was ready to admin-

ister the test, Smith suddenly began complaining of chest pains. A responding EMT found nothing wrong with Smith, and Deputy Tabb attempted to administer the test a second time. Smith, however, grasped his back and legs and complained that he was in excruciating pain. Deputy Tabb testified that Smith told him he was not refusing to take the test but that he was expressing a need for medical attention. Just before they left for the hospital, Deputy Tabb suggested a blood-alcohol test be conducted at the hospital, and Smith agreed. When they arrived at the hospital emergency room at about 3:20 a.m., Deputy Tabb again read Smith his implied consent warnings and asked Smith if he would submit to a blood-alcohol test. Again, Smith agreed. However, when the hospital personnel arrived to take the blood sample, Smith told them that "they were not to treat him and were not to take anything out of his body or place anything in his body; and that he refused treatment and requested to be transferred to another hospital." When the deputy asked Smith if he was refusing the blood test, Smith said "no." However, when the hospital personnel attempted for the second time to take a blood sample, Smith refused to let them do it. Smith testified that he had not refused the test, but he had wanted to go to a hospital that could accommodate his rare blood type, because he thought he had internal bleeding. Deputy Tabb, however, was never told of this concern by either the hospital staff or by Smith.

At 4:18 a.m., Deputy Tabb gave Smith a citation for refusing the requested state-administered tests. Although the deputy gave Smith a breath test with an alco-sensor device, that test was requested by the doctor to determine whether Smith was too intoxicated to refuse medical treatment. The deputy testified that he never made any statement that would have led Smith to believe that the alco-sensor test was the State's designated choice in a requested blood-alcohol test. After receiving an x-ray, Smith went home. He never sought emergency treatment at another hospital for his feared internal bleeding.

In light of these facts, all of which are based upon Deputy Tabb's personal observations, we conclude that the ALJ's decision was supported by the evidence. See *Miles v. Wells*, supra. Although Smith never expressly said "I refuse to take your test," the ALJ was authorized to interpret Smith's actions as an effective refusal, especially since Smith's injuries were minor and his actions could be interpreted as manipulating events to delay the test until he had metabolized the alcohol in his system. Finally, the evidence to which Smith objected, Deputy Tabb's recounting of the eyewitness' statements that Smith was the sole occupant of the wrecked car, was harmless because it was highly improbable that it contributed to the ALJ's decision. *Lyles v. State*, supra.

2. Based on our decision in Division 1, DPS's remaining enumeration of error is rendered moot.

*Judgment reversed. Barnes and Ellington, JJ., concur.*

DECIDED AUGUST 17, 1999.

*Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Christopher S. Brasher, Senior Assistant Attorney General*, for appellant.

Ronald S. Smith, *pro se.*