## A00A0787. MILES v. AHEARN.

(534 SE2d 175)

RUFFIN, Judge.

Laura Tracy Ahearn was arrested for driving under the influence of alcohol. After she refused to take a breath test, the Department of Public Safety suspended her driver's license. Ahearn requested a hearing before an administrative law judge (ALJ), who affirmed the suspension. Ahearn then appealed to the superior court, which reversed the suspension on the ground that the Department

---

failed to offer into evidence at the hearing the sworn report of the police officer who arrested Ahearn. The Department appeals that ruling, and we reverse.

Before detailing the facts of this case, it is helpful to explain the statutory background. Under Georgia law, a motorist who is arrested for driving under the influence of alcohol is deemed to have consented to chemical testing of her bodily substances to determine the presence of alcohol.[1] If she refuses to submit to such testing, the law enforcement officer who requested the test must submit a sworn report to the Department "that the officer had reasonable grounds to believe the arrested person had been driving [under the influence of alcohol] . . . and that the person had refused to submit to the test upon the request of the law enforcement officer."[2] This sworn statement is customarily completed on a form known as "DPS Form 1205." After the Department receives DPS Form 1205, it shall suspend the motorist's driver's license for one year.[3] The motorist may request an administrative hearing to challenge the suspension.[4] Pursuant to OCGA § 40-5-67.1:

> [t]he scope of the hearing *shall be limited to* the following issues:
>
> (A) Whether the law enforcement officer had reasonable grounds to believe the person was driving or in actual physical control of a moving motor vehicle while under the influence of alcohol or a controlled substance and was lawfully placed under arrest for violating Code Section 40-6-391; or
> (B) Whether the person was involved in a motor vehicle accident or collision resulting in serious injury or fatality;[5] and
> (C) Whether at the time of the request for the test or tests the officer informed the person of the person's implied consent rights and the consequences of submitting or refusing to submit to such test; and
> (D) Whether the person refused the test; or
> (E) Whether a test or tests were administered [and the results thereof]; and

---

[1] OCGA § 40-5-55 (a).

[2] OCGA § 40-5-67.1 (d); see also OCGA § 40-5-67.1 (f) (1) (requiring law enforcement officer to give arrestee notice of intention to suspend driver's license and to forward such notice, along with driver's license and sworn report, to the Department within 10 days of arrest).

[3] OCGA § 40-5-67.1 (d).

[4] OCGA § 40-5-67.1 (g) (1).

[5] Motorists who are involved in an accident resulting in a serious injury or fatality are also deemed to consent to chemical testing, see OCGA § 40-5-55 (a), but that is not an issue here.

(F) Whether the test or tests were properly administered. . . .[6]

We now turn to the facts of this case, as found by the ALJ. At approximately 3:00 a.m. on October 24, 1998, Officer Mike Classey of the Kennesaw Police Department saw Ahearn's van stopped at a traffic light. The light turned green, but the van failed to move until the car behind it honked. As Classey followed the van, it strayed from its lane several times and followed the vehicle in front of it too closely. Classey stopped the van and asked Ahearn for her driver's license and proof of insurance. Ahearn's speech was slurred, and Classey smelled alcohol on her breath. Her eyes were red and watery, and "she had . . . a blank, dazed stare on her face." Ahearn said she had not been drinking, but Classey saw an empty beer bottle in a cup holder and continued to smell alcohol on Ahearn's breath after she stepped out of the van. Classey asked Ahearn to submit to field sobriety tests, but Ahearn refused, saying that she was not going to "play games" with Classey. Classey then arrested Ahearn, read to her the implied consent rights, and asked her to submit to a breath test. Ahearn grew argumentative and said, "[W]hat's the point in taking the test; I'm already under arrest." Classey took Ahearn to the city jail, put her in front of the Intoxilyzer breath testing machine, and explained the test to her. Ahearn said that she was not going to take it. Classey ran the test, which produced a result indicating "refused." At the time, Classey had a valid permit to conduct the test.

At the hearing, Classey testified that he completed DPS Form 1205 and submitted it to the Department. The Department, however, never offered the form into evidence. Ahearn moved for a directed verdict, arguing that there was a "technical insufficiency" in the Department's proof because of the Department's failure to tender the form.[7] The ALJ denied the motion on the ground that the question of whether the Department received Classey's sworn report was beyond the statutory scope of the hearing. The ALJ later entered a final decision upholding the suspension. Among other things, the ALJ found that Ahearn was lawfully arrested, that she refused to submit to the breath test, and that the suspension of her license was proper.

The superior court reversed the ALJ's decision. Citing our opinions in *Cofer v. Summerlin*[8] and *Dept. of Pub. Safety v. Maples*,[9] the superior court ruled that the Department had to make "an initial showing that the license was suspended by the Department." The

---

[6] (Emphasis supplied.) OCGA § 40-5-67.1 (g) (2).
[7] Ahearn renewed the motion at the close of the evidence.
[8] 147 Ga. App. 721 (250 SE2d 174) (1978).
[9] 149 Ga. App. 484 (254 SE2d 724) (1979).

Department could do this "by placing into evidence a copy of the sworn report of the police office[r] that was received by the Department." Only then could the determination "be made as to whether the suspension was proper."

1. The Department argues that it was not required to tender DPS Form 1205 into evidence. We agree.

OCGA § 40-5-67.1 expressly limits the scope of a hearing to challenge a license suspension to six enumerated issues, including the lawfulness of the arrest, whether the motorist was informed of her implied consent rights, whether she refused testing, the results of any test given, and whether the testing was properly administered. Whether the arresting officer completed DPS Form 1205 and submitted it to the Department has no bearing on these issues, and nothing in the statute requires that the Department tender it into evidence. Where, as here, the arresting officer testifies in person as to the events of the arrest, the form clearly is not necessary to the resolution of the six enumerated issues.[10] And there is no need, as the superior court ruled, for an initial showing that the license was suspended, because the fact of the suspension is not at issue. Ahearn would not have requested a hearing if the Department had not suspended her license.

Our decisions in *Cofer* and *Maples* do not control this case. In *Cofer*, as here, the Department suspended a motorist's driver's license after he refused to submit to testing. The motorist requested a hearing, and the suspension was affirmed. The motorist then appealed to the superior court, which reversed because "the implied consent affidavit was never introduced into evidence at the hearing and does not appear in the record."[11] We affirmed the superior court, holding that:

> [a]s a condition precedent to suspending a person's driver's license, [the law] requires that the Department of Public Safety receive a sworn report from the arresting officer that he had reasonable grounds to believe that the accused was driving under the influence of drugs or alcohol and that he refused to submit to tests to detect his level of intoxication. . . . The superior court correctly held that the filing of the arresting officer's affidavit was a condition precedent to suspension of appellee's driver's license and because the affidavit was not introduced in evidence at the hearing, there

---

[10] Ahearn does not argue that she failed to receive a copy of DPS Form 1205. Thus, had Officer Classey's testimony at the hearing conflicted with his sworn report, Ahearn presumably could have used the form to impeach him.

[11] (Punctuation omitted.) *Cofer*, supra at 721.

was no evidence that the affidavit was received by the Department of Public Safety.[12]

In *Maples*, we relied on our ruling in *Cofer*, holding that the Department's failure to introduce the arresting officer's affidavit into evidence at the hearing was a "fatal" omission.[13]

*Cofer* and *Maples*, however, were decided more than 20 years ago under a predecessor statute to OCGA § 40-5-67.1. Like the present statute, the law that was in effect when *Cofer* and *Maples* were decided allowed a motorist whose license was suspended for failure to submit to chemical testing to request a hearing.[14] As to the scope of the hearing, the law provided only that "[a]fter such hearing, the Department shall sustain the order of suspension, or rescind such order."[15] The law did not limit the issues to be addressed at the hearing. Because the legislature has now chosen to expressly limit the issues which may be considered at the hearing, and those issues do not involve the Department's receipt of DPS Form 1205, *Cofer* and *Maples* no longer apply. Thus, the Department's failure to submit the officer's sworn report at Ahearn's hearing did not require a decision in her favor.

2. In light of our decision above, we need not address the Department's second enumeration of error.

3. Ahearn argues that, even if the absence of the sworn report was not fatal to the Department's case, the ALJ's decision was wrong for another reason. Specifically, Ahearn maintains that the ALJ erred in finding that she refused to take the breath test. Although Ahearn made this argument in the superior court, the court did not address it. Nevertheless, because we affirm a trial court's ruling it if is right for any reason,[16] we now address this argument.

Ahearn testified at the hearing that after Officer Classey placed her in front of the Intoxilyzer, he covered the machine's display with a piece of paper and told Ahearn that she could not see it. Ahearn asked, "Can I see your procedure manual that says that you are allowed to cover it up?" According to Ahearn, Classey responded that she was refusing to take the test and was disorderly. Classey testified that he had taken a class to become certified to operate the Intoxilyzer. He stated that he always covers the display before giving the test to prevent test subjects from "stop[ping] short of providing a full breath sample for the machine to analyze." Classey admitted that the

---

[12] Id. at 722.
[13] *Maples*, supra at 485 (3).
[14] Former Code Ann. § 68B-306 (c), (d).
[15] Former Code Ann. § 68B-306 (d).
[16] See, e.g., *Frederick v. State*, 226 Ga. App. 540, 542 (1) (487 SE2d 107) (1997).

operator's training manual for the Intoxilyzer did not instruct him to cover the display but said that he was trained to do so at his certification class. Classey also testified that Ahearn repeatedly stated that she would not take the test *before* asking about the covered display. Ahearn insists that she did not refuse to take the test. She claims that she would have taken it if Classey had either uncovered the display or proved that proper procedure required that it be covered.

Judicial review of an agency decision is limited to a determination of whether there is "any evidence" to support that decision.[17] We must accept the agency's findings of fact unless they are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."[18] Applying this standard here, we must uphold the ALJ's finding that Ahearn refused the test. Pretermitting whether it is proper to cover the display during the administration of the breath test, there was evidence in the record that Ahearn's refusal preceded the covering of the display. Thus, we cannot say that the ALJ's finding was clearly erroneous.

Accordingly, we reverse the order of the superior court and reinstate the decision of the ALJ.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED APRIL 28, 2000 —

*Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Christopher S. Brasher, Senior Assistant Attorney General, James J. Phillips, Assistant Attorney General,* for appellant.

*Chestney Hawkins Law Firm, Michael M. Hawkins, Sherry B. Lantz,* for appellee.

---

[17] *Miles v. Carr*, 224 Ga. App. 247 (480 SE2d 282) (1997).
[18] (Punctuation omitted.) *Dept. of Pub. Safety v. Ramey*, 215 Ga. App. 334, 335 (450 SE2d 332) (1994).