A01A2030. DEPARTMENT OF PUBLIC SAFETY et al.
v. ROBINETTE.
(564 SE2d 726)

POPE, Presiding Judge.

Following his DUI arrest, Mark Robinette requested a hearing on the administrative suspension of his driver's license. An administrative law judge ("ALJ") held an evidentiary hearing and then sustained the license suspension. Robinette filed a petition for judicial review with the superior court. The superior court reversed the ALJ's ruling because the test result slip from the breath-testing device was not introduced into evidence at the administrative hearing. Pursuant to our grant of their application for a discretionary appeal, the Georgia Department of Public Safety (the "Department") and its Commissioner, Colonel Sid Miles, appeal the judgment of the superior court. We affirm because the evidence did not show that Robinette's breath test was properly administered.

The superior court sits as an appellate court when reviewing an ALJ's ruling upholding a license suspension. See *Miles v. Smith*, 239 Ga. App. 641 (1) (521 SE2d 687) (1999). "In turn, in reviewing a superior court's order in a case under the Administrative Procedure Act, our function is to determine whether the superior court has in its own final ruling committed an error of law. [Cit.]" (Punctuation omitted.) *Miles v. Carr*, 224 Ga. App. 247 (480 SE2d 282) (1997). The

---

[11] Id. at 561 (Ruffin, J., concurring and concurring specially).

ALJ's ruling will be upheld if there was any evidence to support it. *Miles v. Smith,* 239 Ga. App. at 641.

Robinette's driver's license was suspended pursuant to OCGA § 40-5-67.1 (c), which provides for the suspension of the driver's license of those persons whom an arresting officer reasonably believes to be driving under the influence in violation of OCGA § 40-6-391. The scope of an administrative license suspension hearing is limited to the specific issues listed in OCGA § 40-5-67.1 (g) (2). The relevant issues here included: (1) whether the arresting officer had reasonable grounds to believe Robinette was driving under the influence of alcohol and was lawfully placed under arrest for violating OCGA § 40-6-391 (see OCGA § 40-5-67.1 (g) (2) (A)); (2) whether, at the time of the request for a blood alcohol test, the arresting officer informed Robinette of his implied consent rights and the consequence of submitting or refusing to submit to the test (see OCGA § 40-5-67.1 (g) (2) (C)); and (3) whether the test results indicated an alcohol concentration of 0.10 grams or more (see OCGA § 40-5-67.1 (g) (2) (E)). OCGA § 40-5-67.1 (g) (2) (F) requires the consideration at the administrative hearing of

> Whether the test or tests were properly administered by an individual possessing a valid permit issued by the Division of Forensic Sciences of the Georgia Bureau of Investigation on an instrument approved by the Division of Forensic Sciences or a test conducted by the Division of Forensic Sciences, including whether the machine at the time of the test was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order, which shall be required. A copy of the operator's permit showing that the operator has been trained on the particular type of instrument used and one of the original copies of the test results or, where the test is performed by the Division of Forensic Sciences, a copy of the crime lab report shall satisfy the requirements of this subparagraph.

The only witness at the administrative hearing was the Cobb County policeman who was the arresting officer. The transcript shows that on October 1, 1999, at 1:45 in the morning, the officer stopped Robinette for failing to maintain a lane while driving his car. The officer could smell alcohol on Robinette's breath, and he admitted to recently drinking an alcoholic beverage. Robinette performed poorly on a number of field sobriety tests. Based on the foregoing, the officer placed Robinette under arrest for driving under the influence of alcohol and read to him the appropriate implied consent warning.

The officer took Robinette to the Cobb County jail, where he submitted to a breath test on the "Intoxilyzer 5000." According to the oral testimony of the arresting officer, the testing device showed 0.131 grams percent alcohol. The arresting officer served Robinette with a notice of intent to suspend his driver's license. Although neither the officer's operating permit for the testing device nor the test result slip was admitted into evidence, the ALJ found that all the requirements for the suspension of Robinette's driver's license had been shown by the Department.

The superior court reversed the ruling of the ALJ because the evidence failed to satisfy the requirements of OCGA § 40-5-67.1 (g) (2) (F), noting that the arresting officer did not introduce a copy of the original test result slip. The Department argues that OCGA § 40-5-67.1 (g) (2) (F) does not establish an absolute requirement that the original test result slip be admitted into evidence. We agree. OCGA § 40-5-67.1 (g) (2) (F) is constructed of two sentences. The first sentence addresses what is required, which is to show that the chemical test was properly administered by a permitted individual on a machine in good working order. The second sentence provides that a copy of the operator's permit and the copy of the original test results "shall satisfy" these requirements. But what is required is not the documents; it is the showing that the test was properly administered.

In the context of showing compliance with the chemical testing requirements of the DUI law, certain certificates may operate as evidentiary shorthand for what could be shown by more cumbersome means. The breath-testing instrument inspection certificate provided by OCGA § 40-6-392 (f), for instance, which is self-authenticating evidence that a testing machine is under good working order, "is an administrative and evidentiary procedure designed to relieve the State from the time-consuming and costly burden of having to produce live witnesses and numerous authenticated business records merely to establish that there has been compliance with all the foundation requirements. . . ." *State v. Kampplain*, 223 Ga. App. 16, 19 (477 SE2d 143) (1996). We have allowed oral testimony of a trained operator who performed the chemical test to satisfy the evidentiary requirements which could otherwise have been satisfied by the submission of such an inspection certificate. See *Banks v. State*, 235 Ga. App. 701, 702 (1) (509 SE2d 63) (1998); see also *Evans v. State*, 230 Ga. App. 728, 730 (2) (497 SE2d 248) (1998) (physical precedent only). Consistent with the foregoing, we conclude that the failure of the Department to introduce the copy of the operator's permit and a copy of the original test results is not per se insufficient to satisfy the requirements of OCGA § 40-5-67.1 (g) (2) (F). But, without these documents, the Department is required to show by other evidence that

Robinette's chemical test was properly administered within the meaning of the statute, and this it did not do.

OCGA § 40-6-392 (a) (1) (B) provides that proper testing methodology requires two samples:

> In all cases where the arrest is made on or after January 1, 1995, and the state selects breath testing, two sequential breath samples shall be requested for the testing of alcohol concentration. For either or both of these sequential samples to be admissible in the state's or plaintiff's case-in-chief, the readings shall not differ from each other by an alcohol concentration of greater than 0.020 grams and the lower of the two results shall be determinative for accusation and indictment purposes and *administrative license suspension purposes.*

(Emphasis supplied.) In view of this requirement, the Department did not show the breath test was properly conducted from the testimony given at the hearing. OCGA §§ 40-6-392, 40-5-67.1, and 40-5-55 must be read in pari materia to give proper effect to their purpose. See *State v. Leviner*, 213 Ga. App. 99, 100 (2) (443 SE2d 688) (1994).

The arresting officer testified that "I conducted a State administered chemical test of [Robinette's] breath which was positive with a result of .131 grams." The officer also testified that:

> I . . . showed him my certificate from the State of Georgia saying I'm certified to operate the machine. I advised him that this particular machine requires two samples for a State administered chemical test of his breath, provided him with the certificate, I set up the machine and the Intoxalyzer [sic] and then we conducted the test at that point in time.

Although the testimony shows the officer was certified to operate the testing machine and that he knew that two samples were required for a proper test, only one test result is given. We cannot presume from this evidence that Robinette completed the test as requested, giving two samples that did not differ by more than 0.020 grams of alcohol concentration, the lowest of which was 0.131 grams. The actual test results might answer that question, but the results were not in evidence — the absence of which was strongly noted by Robinette in his argument before the ALJ. We find the Department did not present the documentary evidence which "shall satisfy" the requirements of OCGA § 40-6-392 (a) (1) and did not otherwise show that the tests were properly administered. We must affirm the judgment of the superior court reversing Robinette's license suspension.

888

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED MARCH 13, 2002 —
RECONSIDERATION DENIED APRIL 12, 2002 — 

Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Christopher S. Brasher, Senior Assistant Attorney General, James J. Phillips, Assistant Attorney General, for appellants.
Monte K. Davis, for appellee.