## A06A0684. DOZIER v. PIERCE.
### (631 SE2d 379)

MIKELL, Judge.

We granted the application for discretionary review filed by Greg Dozier, commissioner of the Georgia Department of Driver Services, from the superior court's order reversing an administrative law judge's ("ALJ") suspension of Paul Walker Pierce's Nevada driver's license. We reverse because the superior court applied the wrong standard of review and did not apply current case law regarding the admissibility of breath test results. The relevant facts follow.

At the hearing held before the ALJ, Athens-Clarke County Police Officer Timothy D. Scott testified that he stopped Pierce at a roadblock on November 21, 2004. The officer detected an odor of alcohol and other indicia that Pierce was driving under the influence, including bloodshot eyes, unsteadiness on his feet, and a confrontational demeanor. Pierce also admitted to having consumed some alcohol. Then, the officer read Pierce the implied consent rights for suspects aged 21 or over, OCGA § 40-5-67.1 (b) (2), and asked him to perform field sobriety tests. Pierce refused all field sobriety evaluations, including the alco-sensor test. The officer then arrested Pierce for DUI and asked him to submit to breath testing. At the scene, he initially agreed to a state-administered breath test. However, when Scott transported Pierce to the police department and set up the Intoxilyzer, Pierce refused to blow hard enough into the device to provide a sufficient sample. The officer tested Pierce again, and the second test produced an invalid sample, which, the officer explained, meant that the machine registered no breath sample at all. The officer listed Pierce as having refused to take the test. The officer was the only witness at the hearing; Pierce did not testify.

Following the hearing, the ALJ issued findings of fact that tracked the officer's testimony. In his conclusions of law, the ALJ correctly followed OCGA § 40-5-67.1 (g) (2), which limited the scope of the hearing to the following issues:

(A) Whether the law enforcement officer had reasonable grounds to believe the person was driving or in actual physical control of a moving motor vehicle while under the

influence of alcohol or a controlled substance and was lawfully placed under arrest for violating Code Section 40-6-391; . . . and

(C) Whether at the time of the request for the test or tests the officer informed the person of the person's implied consent rights and the consequence of submitting or refusing to submit to such test; and

(D) Whether the person refused the test; **or**

(E) Whether a test or tests were administered and the results indicated an alcohol concentration of 0.08 grams or more . . . ; and

(F) Whether the test or tests were properly administered.[1]

Based on the evidence, the ALJ concluded that the officer had reasonable grounds to believe that Pierce was driving or in actual physical control of a moving vehicle while under the influence of alcohol; that Pierce was informed of his implied consent rights and of the consequences of refusing to submit to a state-administered breath test; and that Pierce refused to submit to such test when he failed to provide an adequate sample for testing. Accordingly, the ALJ affirmed the Department's decision to suspend Pierce's Nevada driver's license. The ALJ did not make findings of fact regarding OCGA § 40-5-67.1 (g) (2) (F) because he was not required to do so after finding that Pierce refused the test. However, the officer tendered into evidence a copy of his permit to operate the Intoxilyzer 5000, the certificates showing the device to be in good working order, and the printouts of the test results, which stated "insufficient sample" and "invalid sample."

Pierce appealed the ALJ's decision to the superior court, which held that review of a license suspension was de novo under OCGA § 40-5-66 and that a conflict existed between that statute and OCGA § 50-13-19, which states that the superior court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."[2] The court then proceeded to determine whether the Intoxilyzer test was properly administered pursuant to OCGA § 40-5-67.1 (g) (2) (F). Reciting the operating instructions for the device as recounted in *Bagwell v. State*,[3] which stated that "[a]ll breath tests will be preceded by a twenty (20) minute waiting

---

[1] (Emphasis supplied.) OCGA § 40-5-67.1 (g) (2). See *Miles v. Ahearn*, 243 Ga. App. 741, 742-743 (534 SE2d 175) (2000).

[2] OCGA § 50-13-19 (h).

[3] 248 Ga. App. 806, 807 (1), n. 4 (547 SE2d 377) (2001), quoting the 1997 Intoxilyzer 5000 Georgia Operator's Training Manual, p. 22.

period,"[4] the superior court held that because the test printouts reflected that only ten minutes had elapsed between Pierce's first and second breath tests, the testing was conducted improperly and his license should not have been suspended based on his refusal to submit to testing. The Department appeals. "[I]n reviewing a superior court's order in a case under the Administrative Procedure Act, our function is to determine whether the superior court has . . . committed an error of law."[5]

1. As the Department contends, the superior court erred in failing to apply OCGA § 40-5-67.1 (h). That Code section provides that if an ALJ sustains a license suspension after a hearing conducted pursuant to OCGA § 40-5-67.1 (g), "the person whose license has been suspended under this Code section shall have a right to file for a judicial review of the department's final decision, as provided for in Chapter 13 of Title 50."[6] As stated above, OCGA § 50-13-19 (h) specifically prohibits the superior court from substituting its judgment for that of the ALJ "as to the weight of the evidence on questions of fact." Moreover, we have repeatedly held that the superior court sits only as an appellate court when reviewing an ALJ's decision affirming a license suspension, and that the ALJ's decision shall be affirmed so long as there is "any evidence" to support it.[7] Therefore, the superior court erred in this case when it applied the de novo standard of review.

In addition, the trial court erred in concluding that a conflict existed between OCGA § 40-5-66 (b), which provides that a hearing on an appeal to the superior court of a license suspension is de novo, and OCGA § 50-13-19. We recently held that, despite the language regarding de novo review, the superior court sits as an appellate court in conducting its review, and must apply the "any evidence" standard of review.[8] Finally, where, as here, the hearing before the ALJ is conducted pursuant to OCGA § 40-5-67.1, the appeal in the superior court is expressly excepted from OCGA § 40-5-66 (a),[9] and must be conducted as provided in OCGA § 40-5-67.1 (h).

---

[4] Id. at 807 (1).

[5] (Punctuation omitted.) *Dept. of Public Safety v. Robinette*, 254 Ga. App. 884 (564 SE2d 726) (2002), citing *Miles v. Carr*, 224 Ga. App. 247 (480 SE2d 282) (1997).

[6] OCGA § 40-5-67.1 (h).

[7] *Davis v. Brown*, 274 Ga. App. 48, 49 (1) (616 SE2d 826) (2005); *Robinette*, supra at 884-885; *Miles v. Smith*, 239 Ga. App. 641 (1) (521 SE2d 687) (1999); *Miles v. Carr*, supra.

[8] *Davis*, supra at 49 (1).

[9] OCGA § 40-5-66 (a) provides: "Except as provided in subsection (h) of Code Section 40-5-67.1 . . . , any decision rendered by the department shall be final unless the aggrieved person shall desire an appeal. In such case, such person shall have the right to enter an appeal in the superior court of the county of his residence or in the Superior Court of Fulton County."

We conclude, however, that remand is not necessary, because "when this Court reviews a superior court's order in such a case, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency."[10] In the case at bar, the evidence adduced at the hearing supports the ALJ's decision, and the superior court erred in reversing it.

2. The superior court further erred in considering whether the test was properly administered pursuant to OCGA § 40-5-67.1 (g) (2) (F). The ALJ's inquiry ended after finding that Pierce refused the test, the factor stated in OCGA § 40-5-67.1 (g) (2) (D). As stated above, the ALJ must decide "[w]hether the person refused the test; *or* (E) Whether a test or tests were administered and the results indicated an alcohol concentration of 0.08 grams or more . . . ; and (F) Whether the test or tests were properly administered."[11] "[W]here a legislative provision is phrased in the disjunctive, it must be so construed absent a clear indication that a disjunctive construction is contrary to the legislative intent."[12] In accordance with this rule of statutory construction, the ALJ was required to determine *either* that Pierce refused the test *or* whether the tests were administered and whether the results indicated a certain alcohol concentration, and, if so, whether the tests were properly administered. Having found that Pierce refused the test, the ALJ was not required to proceed to the other factors. The superior court erred in concluding otherwise and in reviewing whether the test was properly administered. Under the proper scope of review, the relevant inquiry was whether there was evidence to support the ALJ's finding that Pierce refused the test. Under Georgia law, a "refusal" includes an instance where, as here, the accused refuses to provide "a breath sample sufficient to cause the breath-testing instrument to produce a printed alcohol concentration analysis."[13] As there was evidence introduced at the hearing to support the ALJ's finding on this issue, it is affirmed.

3. Finally, the superior court erred in holding that since the officer administered the breath tests ten minutes apart, the tests were not valid, and Pierce's refusal to submit to the test by failing to give an adequate sample could not be used as evidence to suspend his license. In *State v. Palmaka*,[14] we held that the trial court erred in

---

[10] (Citation and punctuation omitted.) *Davis*, supra at 50 (1). See also *Miles v. Wells*, 225 Ga. App. 698 (484 SE2d 720) (1997).

[11] (Emphasis supplied.) OCGA § 40-5-67.1 (g) (2).

[12] (Citations omitted.) *Gearinger v. Lee*, 266 Ga. 167, 169 (2) (465 SE2d 440) (1996).

[13] OCGA § 40-6-392 (a) (1) (B); *Walker v. State*, 262 Ga. App. 872, 877 (1) (c) (586 SE2d 757) (2003).

[14] 266 Ga. App. 595 (597 SE2d 630) (2004).

suppressing the results of a breath test that was conducted in accordance with methods adopted by the Division of Forensic Sciences of the Georgia Bureau of Investigation, and that any deviation from the machine's operator's manual went to the weight and not to the admissibility of the results.[15] We further held that the 20-minute waiting period between taking samples, as outlined in the manual, was not part of the approved methods of testing,[16] disapproving of language to the contrary in *Casey v. State*.[17] It follows that the superior court erred in holding that the testing was invalid because the officer failed to wait 20 minutes between the first and second tests.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED APRIL 12, 2006 —
RECONSIDERATION DENIED MAY 18, 2006 — 

*Thurbert E. Baker, Attorney General, Christopher S. Brasher, Senior Assistant Attorney General, Robert W. Smith, Assistant Attorney General,* for appellant.

Paul W. Pierce, *pro se.*

---

[15] Id. at 597.
[16] Id.
[17] 240 Ga. App. 329, 331 (3) (523 SE2d 395) (1999).