**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 11, 2019**

# In the Court of Appeals of Georgia

A18A2113. STATE OF GEORGIA v. CROWDER.

A18A2114. CROWDER v. STATE OF GEORGIA.

A18A2115. STATE OF GEORGIA v. CROWDER.

DILLARD, Chief Judge.

Following a bench trial in this *in rem* civil forfeiture action, the Superior Court of Clayton County awarded James L. Crowder $46,820 in U.S. currency that law-enforcement officers seized from his daughter as she attempted to board a flight leaving Hartsfield-Jackson International Airport. In Case No. A18A2113, the State argues that the trial court erred in denying its motion to dismiss Crowder's answer for failure to comply with the statutory requirements for *in rem* forfeiture pleadings. In Case No. A18A2114, Crowder cross appeals, arguing that the court erred in failing to grant his motion to dismiss the State's complaint for insufficient service of process.

And in Case No. A18A2115, the State contends that the trial court erred in denying its motion to stay the release of currency given the State's pending appeal. For the reasons set forth *infra*, we find that Crowder's answer failed to comply with the statutory pleading requirements for forfeiture actions, the State sufficiently effected service of process, and the trial court erred by failing to stay the release of the currency while the State's appeal was pending.

The record shows that at approximately 8:30 a.m., on October 3, 2016, a Clayton County Police Officer on drug-interdiction duty at Hartsfield-Jackson International Airport received a call from a Transportation Security Administration ("TSA") agent, informing him that a female, who was traveling alone, just passed through the main TSA security checkpoint with a carry-on bag containing a large amount of U.S. currency that she attempted to conceal. The TSA agent also provided the officers with a physical description of the woman and her departing flight's gate information. Consequently, the officer and two of his partners went to the departure gate for the woman's flight, found and approached a woman matching the TSA agent's description, identified themselves as police officers, and asked if they could speak with her about the contents of her carry-on bag.

2

The woman identified herself as Shara Cumins and explained that she was returning to California after visiting some people in Alabama for a few days. The officer then asked Cumins if TSA agents located anything in her carry-on bag, and she advised that they had not. But when the officer explained to Cumins that the TSA had already informed him that she had a large amount of cash contained in her carry-on bag, Cumins admitted that she did. At this point, based on her contradictory responses about the cash, her nervous demeanor, the fact that she purchased a return flight ticket only a few days before departing, and the fact that she arrived at the airport just before her flight's departure, the officer suspected Cumins was involved in the illegal drug trade and asked her to accompany him and his partner to a nearby office for further questioning.

Thereafter, the officer asked Cumins how much money her bag contained, and she responded that she was carrying $10,000. The officer then asked Cumins if he could search her carry-on bag, and she consented. In the subsequent search, officers found several blocks of U.S. currency, which were wrapped in plastic and black construction paper and totaled $46,820, but no illegal drugs or other contraband. When asked about the source of the money, Cumins replied that it was given to her by her father. Cumins then provided officers with her sister's telephone number,

explaining that her father, James Crowder, lived with the sister. Subsequently, the second officer called the phone number and spoke to a man claiming to be the sister's husband, who said that the sister would return the officer's call shortly. Approximately five minutes later, Cumins's sister returned the officer's call, told the officer that her father (Crowder) was with her, and turned on her phone's speaker function so that the officer could speak with him. And when asked about the money his daughter was carrying, Crowder told the second officer that he had only given her somewhere between $2,000 and $3,000.

Following this phone call, the officers confronted Cumins with Crowder's claim that he had given her no more than $3,000, at which point Cumins stated that she was given the money to take to California but refused to identify the person who had given it to her. When pressed by the officers, Cumins claimed that this person owed her $13,000 for transporting the money, but she continued refusing to identify the person, stating that she "did not want to tell on anybody else involved." In light of these particular circumstances, the officers requested that Cumins complete a "Disclaimer of Ownership of Assets & Waiver of Rights to Notice of Seizure Form." On that form, Cumins initially wrote that Crowder was the owner of the currency, but she provided no address for Crowder. Then, when the officers reminded her that only

4

a few minutes earlier she claimed that her father was not the source of the currency, she scratched out his name and listed the owner, again without providing any address, as "Beatrice Longbottom." After signing the form, Cumins caught a later flight.

Shortly thereafter, the officers filed a Notice of Seizure for Complaint for Forfeiture, and on December 6, 2016, the State filed a Complaint for Forfeiture in the Superior Court of Clayton County as to the $46,820 seized from Cumins at the airport. As an *in rem* action, the complaint named the currency as the defendant, listed Cumins as the person believed to be the owner, and alleged that the currency was being used in an attempt to purchase marijuana or other controlled substances. The State served Cumins with the complaint at her residence in California, and less than one month later, she filed an answer, in which she averred that Crowder was the owner of the currency; but her answer did not provide an address for Crowder.

On February 9, 2017, three days after Cumins filed her answer, the State filed an Amended Complaint for Forfeiture, naming Crowder as a potential claimant of the currency. Subsequently, the State attempted to personally serve Crowder at what it believed to be his last known address: 401 Melton Avenue in Opelika, Alabama, but the sheriff returned the summons *non est* ("not found"). Additionally, the State sent a copy of the summons and complaint to the same address via certified mail, but

5

despite two attempts, the postal service returned the mailed documents as unclaimed. Consequently, on March 16, 2017, the State filed a motion for order of service by publication, claiming that Crowder resided out of state, that he could not be served at his last known address, and that no other address was known. A few weeks later, the trial court granted the State's motion, and the State served Crowder by publication by placing notices regarding the forfeiture in the local newspaper.

Thereafter, in response to various discovery requests by the State, Cumins continued to assert that the currency belonged to Crowder. On August 8, 2017, the trial court scheduled a bench trial for September 26, 2017, and notified all the parties, including Crowder by sending such notice to the 401 Melton Avenue address. Later, in discovery responses dated August 25, 2017, Cumins claimed that Crowder's address was 407 Melton Avenue, rather than 401. Then, on November 28, 2017, the trial court held a hearing on the matter, during which the State moved to dismiss Cumins on the ground that, in light of her assertions that the currency belonged to her father, she lacked standing. Counsel for Crowder appeared at the hearing, claimed that Crowder had never been served, and moved the trial court for a continuance so that a full evidentiary hearing could be scheduled. Without ruling on the standing issue, the court granted Crowder's motion.

6

On December 6, 2017, the State filed a motion for judgment on the pleadings, arguing that, despite being served by publication, Crowder had never filed an answer to the forfeiture complaint. A few weeks later, Cumins moved to dismiss without prejudice her claim to the currency, which the trial court granted. Then, on December 29, 2017, Crowder filed an answer, which was unverified and failed, *inter alia*, to state his current address. In response, the State filed a motion for a more definite statement. But Crowder responded by filing a motion to dismiss the complaint, arguing that the State failed to effect service of process.

On January 24, 2018, the trial court held an evidentiary hearing on the matter, during which the two police officers who interrogated Cumins at the airport testified. Crowder also testified, claiming that the $46,820 was his money. Specifically, Crowder testified that he received a Social Security disability payment of $9,000 sometime in 2010, and $36,000 in settlement money for unspecified employment, which had "shut down." Crowder further testified that he had been keeping the money in a trailer near his home for some time, having previously accessed it from a bank, whose name he could not recall.

At the conclusion of the hearing, the trial court took the matter under advisement. But on March 27, 2018, the court, without explicitly ruling on either the

State's motion for judgment on the pleadings or Crowder's motion to dismiss, issued an order finding that the State failed to provide evidence that the $46,820 in U.S. currency was being used for an illegal purpose and, thus, awarding the money to Crowder. The State filed a notice of appeal on April 10, 2018, but on April 13, 2018, Crowder filed a motion to release the currency. Then, on April 23, 2018, Crowder filed a notice of cross appeal, arguing that the trial court erred in failing to dismiss the State's complaint for insufficient service of process. The State filed a response to Crowder's motion to release the currency, citing its pending appeal, but the trial court, nonetheless, granted Crowder's motion. Subsequently, the State filed a notice of appeal of that decision, as well as an emergency motion with this Court to stay the release of the funds, which we granted. These consolidated appeals follow.

*Case No. A18A2113*

1. In Case No. A18A2113, the State contends that the trial court erred in effectively denying its motion for judgment on the pleadings or to dismiss Crowder's answer for failure to comply with the statutory pleading requirements for an *in rem* forfeiture answer. We agree.

8

We review a trial court's ruling on a motion to dismiss a claimant's answer in an *in rem* forfeiture case for an abuse of discretion.[1] But we conduct a *de novo* review of the trial court's "application of the law to undisputed facts, owe no deference whatsoever to the trial court's conclusions of law, and are free to apply anew the legal principles to the facts."[2] With these guiding principles in mind, we will now address the State's contention.

It is, of course, well established that the General Assembly may "impose pleading requirements in special statutory proceedings in addition to those found in our Civil Practice Act and in such cases, the sufficiency of a pleading must be judged in light of the specific statutory requirements."[3] Civil forfeiture proceedings are one such area of our law, and "[i]n a civil in rem forfeiture action, a claimant's answer must be in strict compliance with the special pleading requirements of OCGA § 9-16-

---

[1] *See Coffey v. State of Ga.*, 339 Ga. App. 367, 368 (793 SE2d 557) (2016) (noting that we review a trial court's ruling on a motion to strike a claimant's answer in a forfeiture case for an abuse of discretion); *Loveless v. State of Ga.*, 337 Ga. App. 250, 251 (1) (786 SE2d 899) (2016) (same).

[2] *Coffey*, 339 Ga. App. at 368 (punctuation omitted); *accord Loveless*, 337 Ga. App. at 251 (1).

[3] *State of Ga. v. Alford*, 264 Ga. 243, 245 (2) (a) (444 SE2d 76) (1994); *accord Coffey*, 339 Ga. App. at 368.

9

12 (c) (1)."[4] Importantly, the failure to timely file an answer in strict compliance with the specific pleading requirements of the forfeiture statute "results in dismissal of the answer."[5]

Turning to the relevant text, OCGA § 9-16-12 (c) (1) provides:

> An owner of or interest holder in the property may file an answer asserting a claim against the property in the action in rem. Any such answer shall be filed within 30 days after the service of the summons and complaint. If service is made by publication and personal service has not been made, an owner or interest holder shall file an answer within 30 days of the date of final publication. An answer shall be verified by the owner or interest holder under penalty of perjury. In addition to complying with the general rules applicable to filing an answer in civil actions as set forth in Article 3 of Chapter 11 of this title, the answer shall set forth:
>
> (A) The name of the claimant;
>
> (B) The address at which the claimant resides;

---

[4] *Coffey*, 339 Ga. App. at 368 (punctuation omitted); *accord Loveless*, 337 Ga. App. at 251 (1). The former civil *in rem* forfeiture statute found at OCGA § 16-13-49 was repealed and replaced with OCGA § 9-16-12 effective July 1, 2015. Ga. L. 2015, p. 693, § 1-1.

[5] *Coffey*, 339 Ga. App. at 368 (punctuation omitted); *accord Loveless*, 337 Ga. App. at 251 (1).

(C) A description of the claimant's interest in the property;

(D) A description of the circumstances of the claimant's obtaining an interest in the property and, to the best of the claimant's knowledge, the date the claimant obtained the interest and the name of the person or entity that transferred the interest to the claimant;

(E) The nature of the relationship between the claimant and the person who possessed the property at the time of the seizure;

(F) A copy of any documentation in the claimant's possession supporting his or her answer; and

(G) Any additional facts supporting the claimant's answer.

In this matter, it is undisputed that Crowder never verified his answer. Additionally, Crowder's answer failed to include the address where he resided; a description of the circumstances of his obtaining the property; the date or even a time frame in which he obtained the property; the nature of his relationship with Cumins, who possessed the property at the time of the seizure; or any documentation supporting his answer. Furthermore, after the State filed a motion for a more definite statement (in which it cataloged the deficiencies in his answer), Crowder—rather than amend his answer —moved to dismiss the State's complaint. Given these particular

11

circumstances, Crowder's answer failed to comply with the special pleading requirements of OCGA § 9-16-12 (c) (1). And accordingly, the trial court erred in denying the State's motion for judgment on the pleadings or, alternatively, in failing to dismiss Crowder's answer.[6]

*Case No. A18A2114*

2. In Crowder's cross-appeal, he contends that the trial court erred in failing to grant his motion to dismiss the State's complaint for insufficient service of process. We disagree.

---

[6] *See Coffey*, 339 Ga. App. at 369-70 (holding that trial court properly struck claimant's answer when such answer failed to provide claimant's address or a time frame in which claimant acquired an interest in the subject currency); *Loveless*, 337 Ga. App. at 252 (1) (holding that claimant's answer in forfeiture action did not satisfy statutory requirements, and thus was properly struck, because his answer did not include the date of the transfer of the cash, the identity of the transferor, or the circumstances of his acquiring the cash); *Howard v. State of Ga.*, 321 Ga. App. 881, 882-83 (743 SE2d 540) (2013) (finding that trial court did not abuse its discretion in striking answers when claimants failed to properly verify their answers even after being provided opportunity to do so); *Arreola-Soto v. State of Ga.*, 314 Ga. App. 165, 166-67 (1) (723 SE2d 482) (2012) (ruling that claimants' answer, in civil in rem forfeiture action involving numerous items of seized personal property, was legally insufficient to assert claims to some items for which no information or only vague information regarding acquisition was provided); *Portee v. State of Ga.*, 277 Ga. App. 536, 538 (1) (b) (627 SE2d 63) (2006) (holding that claimant's unverified answer in civil forfeiture action failed to comply with special pleading requirements).

12

As discussed *supra*, shortly after Cumins filed her answer (in which she claimed that Crowder was the actual owner of the currency), the State filed an Amended Complaint for Forfeiture, naming Crowder as a potential claimant and attempted to personally serve him at what it believed to be his last known address: 401 Melton Avenue in Opelika, Alabama. But as previously noted, the sheriff returned the summons *non est*. The State also sent a copy of the summons and complaint to the same address, via certified mail, but despite two attempts, the postal service returned the mailed documents as unclaimed. As a result, the State filed a motion for order of service by publication, claiming that Crowder resided out of state, that he could not be served at his last known address, and that no other address was known. A few weeks later, the trial court granted the State's motion, and the State then served Crowder by publication by placing notices regarding the forfeiture in the local newspaper for two consecutive weeks.

On cross-appeal, Crowder argues that the service by publication was not an option under the Uniform Civil Forfeiture Procedure Act[7] and that, even if it was, the State failed to show that it exercised due diligence in its attempts to serve Crowder

---

[7] *See* OCGA § 9-16-1 *et seq*.

13

personally. But these arguments are belied by the very statutory scheme Crowder claims supports his position. OCGA § 9-16-12 (b) (3) explicitly provides:

> If real property is the subject of the complaint for forfeiture *or the owner or interest holder* is unknown or *resides out of this state* or departs this state or cannot after due diligence be found within this state or conceals himself or herself so as to avoid service, a copy of the notice of the complaint for forfeiture shall be published once a week for two consecutive weeks in the legal organ of the county in which the complaint for forfeiture is pending. Such publication shall be deemed notice to any and all persons having an interest in or right affected by such complaint for forfeiture and from any sale of the property resulting therefrom, but shall not constitute notice to an interest holder unless that person is unknown or resides out of this state or departs this state or cannot after due diligence be found within this state or conceals himself or herself to avoid service.[8]

Thus, this statutory text plainly shows that it allows for service by publication if the owner of the subject property "resides out of this state." And although there was conflicting evidence as to Crowder's exact street address, nothing in the record disputes the State's assertion that Crowder resided somewhere in Opelika, Alabama, *i.e.*, out of state. Indeed, Crowder ultimately confirmed this fact.

---

[8] (Emphasis supplied.)

14

Furthermore, setting aside the issue of whether the State exercised due diligence in initially attempting to personally serve Crowder, under the plain terms of OCGA § 9-16-12 (b) (3), such attempts were not required. The first sentence of the statute provides: "If real property is the subject of the complaint for forfeiture *or* the owner or interest holder is unknown *or* resides out of this state *or* departs this state *or* cannot after due diligence be found within this state *or* conceals himself or herself so as to avoid service. . . ."[9] Immediately notable is the statute's use of the word "or" as a disjunctive, and the natural meaning of "or," when used in such a way, is "to mark an alternative and present choice, implying an election to do one of two things[.]"[10] And when a legislative provision is "phrased in the disjunctive, it must be so construed absent a clear indication that a disjunctive construction is contrary to the legislative [directive]."[11] Therefore, because under the statute's plain terms the instances permitting service by publication are separated by the word "or" rather than

---

[9] OCGA § 9-12-16 (b) (3) (emphasis supplied).

[10] *Gearinger v. Lee*, 266 Ga. 167, 169 (2) (465 SE2d 440) (1996) (punctuation omitted); *accord Haugen v. Henry Cty.*, 277 Ga. 743, 744-45 (2) (594 SE2d 324) (2004).

[11] *Gearinger*, 266 Ga. at 169 (2) (punctuation omitted); *accord Mornay v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 331 Ga. App. 112, 115 (2) (769 SE2d 807) (2015).

15

"and," the State's ability to serve a claimant who resides out of state via publication is not contingent upon whether it first exercised due diligence to serve such a claimant personally.[12]

Crowder further argues that because he was not added to the State's forfeiture complaint as a potential claimant of the subject currency until 129 days after its seizure from Cumins's carry-on bag at the airport, the State's forfeiture action is barred by the equitable doctrine of laches. But this argument similarly lacks merit. Crowder is correct that under OCGA § 9-3-3, "courts of equity may interpose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights." Nevertheless, laches "does not arise from delay alone."[13] In fact, to prevail on a plea of laches, "prejudice,

[12] *See Mathis v. State*, 336 Ga. App. 257, 260 (784 SE2d 98) (2016) (noting that when a statute uses the word "or" disjunctively, it is interpreted as expanding the statute's coverage rather than limiting it); *Dozier v. Pierce*, 279 Ga. App. 464, 467 (2) (631 SE2d 379) (2006) (holding that because statute pertaining to testing of motorists' blood-alcohol levels used disjunctive "or" in requiring ALJ to determine "[w]hether the person refused the test; or . . . [w]hether a test or tests were administered and the results indicated an alcohol concentration of 0.08 grams or more . . . . [,]" after ALJ determined that appellee refused test, ALJ was not required to proceed to other factors).

[13] *Stone v. Williams*, 265 Ga. 480, 480 (458 SE2d 343) (1995) (punctuation omitted); *accord SRB Inv. Servs., LLLP v. Branch Banking & Trust Co.*, 289 Ga. 1, 7 (3) (b) (709 SE2d 267) (2011).

too, must be shown."[14] And here, putting aside the issue of whether the State's inclusion of Crowder as a potential claimant was frustrated by Cumins's initial equivocation as to her father's ownership interest in the currency, the trial court permitted Crowder to file an answer and to fully contest the State's claim, and thus, Crowder has failed to show that he was prejudiced by any delay in naming him as a claimant.[15] Indeed, vague assertions of harm, like Crowder's, "supported by no citation to evidence in the record, are insufficient to sustain a defense of laches."[16] Accordingly, the trial court did not err in failing to grant Crowder's motion to dismiss the State's forfeiture complaint.

---

[14] *Stone*, 265 Ga. at 480 (punctuation omitted); *accord SRB Inv. Servs., LLLP*, 289 Ga. at 7 (3) (b).

[15] *See SRB Inv. Servs., LLLP*, 289 Ga. at 7 (3) (b) (holding that defendants were not prejudiced by plaintiff's delay in seeking interlocutory injunction freezing defendants' assets to prevent fraudulent transfers, and thus plaintiff was not precluded by laches from obtaining injunction); *Rasheed v. Klopp Enters., Inc.*, 276 Ga. App. 91, 94-95 (1) (622 SE2d 442) (2005) (holding that plaintiffs' amendment of complaint to add another defendant was not prejudicial and, therefore, was not barred by laches).

[16] *SRB Inv. Servs., LLLP*, 289 Ga. at 7 (3) (b).

3. Finally, in Case No. A18A2115, the State contends that the trial court erred in denying its motion to stay the release of the currency given the State's pending appeal in Case No. A18A2113. Once again, we agree with the State.

As previously discussed, approximately two weeks after the trial court awarded Crowder the $46,820 in U.S. currency, the State filed a notice of appeal. Nevertheless, three days later, Crowder filed a motion to release the currency, which the trial court granted. Subsequently, the State filed a notice of appeal of that decision, as well as an emergency motion with this Court to stay the release of the funds, which we granted.

Georgia law makes clear that "the filing of the notice of appeal operates as a supersedeas and deprives the trial court of the power to affect the judgment appealed, so that subsequent proceedings purporting to supplement, amend, alter or modify the judgment, whether pursuant to statutory or inherent power, are without effect."[17]

---

[17] *Upton v. Jones*, 280 Ga. 895, 896 (1) (635 SE2d 112) (2006) (punctuation omitted); *see Davis v. Harpagon Co., LLC*, 281 Ga. 250, 253 (8) (637 SE2d 1) (2006) (holding that "a trial court, upon the filing of a notice of appeal, loses jurisdiction to modify or enforce a judgment which is the subject of the appeal during the period of supersedeas"); *see also* OCGA § 5-6-46 (a) ("In civil cases, the notice of appeal filed as provided in Code Sections 5-6-37 and 5-6-38 shall serve as supersedeas upon payment of all costs in the trial court by the appellant and it shall not be necessary

Here, given the State's timely notice of appeal in Case No. A18A2113, as provided in OCGA §§ 5-6-37 and 5-6-38, the State was not required to release the seized currency until the disposition of that appeal.[18] Accordingly, the trial court erred in considering Crowder's motion to release the currency, much less granting it.

*Judgment affirmed in Case No. A18A2114. Judgments reversed in Case Nos. A18A2113 and A18A2115. Doyle, P. J., and Mercier, J., concur.*

---

that a supersedeas bond or other form of security be filed . . . .").

[18] *See State of Ga. v. Vurgess*, 182 Ga. App. 544, 545 (1) (356 SE2d 273) (1987) (holding that State was not required to obtain a stay of the release of currency subject to forfeiture following judgment in favor of claimant prior to the expiration of 30-day period for filing of notice of appeal).